# EXHIBIT 1

1   Jennifer Librach Nall
    *(Pro Hac Vice To Be Filed)*
2   Texas State Bar No. 24061613
    Jennifer.Nall@us.dlapiper.com
3   Shawn Bastani
    *(Pro Hac Vice To Be Filed)*
4   Texas State Bar No. 24127680
    Shawn.Bastani@us.dlapiper.com
5   **DLA Piper LLP (US)**
    303 Colorado Street,
6   Suite 3000
    Austin, Texas 78701
7   Telephone:    512.457.7000
    Facsimile:    512.457.7001
8
    Mary Dahl
9   State Bar No. 336232
    Mary.dahl@us.dlapiper.com
10  **DLA Piper LLP (US)**
    3203 Hanover Street,
11  Suite 100
    Palo Alto, CA 94304
12  Telephone:    650.833.2000
    Facsimile:    650.833.2001
13

14  Attorneys for Applicant

15

IN THE UNITED STATES DISTRICT COURT

16

FOR THE NORTHERN DISTRICT OF CALIFORNIA

17

18  In re Application of

19  Amazon EU S.à.r.l.

20  Applicant, for an Order Pursuant to
    28 U.S.C. § 1782 to Conduct Discovery
21  for Use in a Foreign
    Proceeding

22

23

24

25

26

27

28

Case No. 5:26-mc-80013

**DECLARATION OF DR. CONSTANZE KRENZ IN SUPPORT OF MEMORANDUM OF LAW IN SUPPORT OF EX PARTE APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

### DECLARATION OF DR. CONSTANZE KRENZ

I, Dr. Constanze Krenz, declare as follows:

1. I submit this Declaration in support of Amazon EU S.à.r.l.'s *Ex Parte* Application for an Order to Conduct Discovery for Use in a Foreign Proceeding ("Application"). Unless specifically noted otherwise, I have personal knowledge of the facts set forth in this Declaration and can testify competently with regard to the matters contained in this Declaration.

2. I am a partner in the German Intellectual Property and Technology Group of DLA Piper UK LLP.

3. My formal education includes: (a) passing the First State Examination at the University of Mannheim; (b) passing the Second State Examination at the Higher Regional Court of Karlsruhe; and (c) obtaining my Doctor of Laws degree from the Johann Wolfgang Goethe-Universität Frankfurt am Main.

4. I am admitted as a Rechtsanwältin (attorney at law) to practice before German courts.

5. In May 2022, Inodyn filed a statement of claim against Amazon EU S.à.r.l. in the Mannheim Regional Court of Germany alleging infringement of German Patent No. DE 10 2013 001 219 ("Inodyn-Amazon Litigation"). I represent Amazon EU S.à.r.l. in the Inodyn-Amazon Litigation.

6. I participated in a meet and confer with legal counsel for Google LLC ("Google"). Based on that conversation, I anticipate Google will not oppose this Application.

7. Attached as Exhibit A is a true and correct copy of a machine translation of the complaint filed in the Inodyn-Amazon Litigation—Landgericht Mannheim [LG] [Mannheim Regional Court] May 16, 2022, 2 0 46/21 (Ger.) [hereinafter Inodyn's Complaint].

DLA PIPER LLP (US)
ATTORNEYS AT LAW
AUSTIN

1627200584

1

**DECLARATION ISO MEMO OF LAW
ISO EX PARTE APPLICATION**

Docusign Envelope ID: 0F569BC2-EE0D-483A-89G0-1085AD166164

8.      Attached as Exhibit B is a machine translation of a true and correct copy of relevant excerpts from the infringement judgment issued in the Inodyn-Amazon Litigation by the Landgericht Mannheim [LG] [Mannheim Regional Court] on Aug. 29, 2025, 2 0 46/21 (Ger.) [hereinafter Mannheim Infringement Judgment]. My understanding is that, at the Court's request, Amazon EU S.à.r.l.'s counsel in the USA will file under seal, in accordance with the procedures set forth in Civil L.R. 5-1 and Civil L.R. 79-5, a copy of the complete document.

9.      As set forth in Inodyn's Complaint and in the Mannheim Infringement Judgment, Inodyn requested that the Mannheim Regional Court find German Patent No. DE 10 2013 001 219 infringed and award both injunctive relief and damages in principle.

10.     As often occurs in patent litigation in Germany, the Inodyn-Amazon Litigation first proceeded with infringement proceedings that focused on whether German Patent No. DE 10 2013 001 219 was used without the permission of its owner. Although infringement proceedings in Germany do not always determine the amount of damages, infringement proceedings do determine liability for damages. *See* Daniel Hoppe & Christian Holtz, *Patent Litigation in Germany* 129, 165 (2019) [hereinafter Hoppe & Holtz], https://preubohlig.de/wp-content/uploads/2019/07/PatentLitigationHoppe.pdf [https://perma.cc/5GMP-UTVZ].

11.     During the infringement proceedings, Amazon EU S.à.r.l. requested that Inodyn produce copies of its patent license agreements relating to Android applications, including all licensing agreements with Google relating to German Patent No. DE 10 2013 001 219. However, the Mannheim Regional Court did not substantively rule on this request. Instead, the Mannheim Regional Court concluded that it was unnecessary to decide that request during the infringement proceedings.

12.     In August 2025, the Mannheim Regional Court held that German Patent No. DE 10 2013 001 219 was infringed. *See* Mannheim Infringement Judgment. Given this ruling, unless

DLA Piper LLP (US)
Attorneys at Law
Austin

2

1627200584

DR. KRENZ DECLARATION IN
SUPPORT OF EX PARTE APPLICATION

Docusign Envelope ID: 0F569BC2-EE0D-483A-89G0-1085AD166164

the Mannheim Infringement Judgment is vacated, Inodyn can re-assert its claim for damages in a new proceeding to calculate the amount of damages. The Mannheim Infringement Judgment is currently on appeal before the Higher Regional Court of Karlsruhe.

13.     I foresee that a damages proceeding will occur in the near future in the Inodyn-Amazon Litigation for numerous reasons. Although Inodyn requested damages in principle, as often occurs in patent litigation in Germany, the amount of damages for infringement of German Patent No. DE 10 2013 001 219 will be determined in a second round of proceedings, if the Mannheim Infringement Judgment is not vacated and the parties cannot agree on the amount of damages. *See* Hoppe & Holtz, at 165. Another reason that I foresee that a damages proceeding will occur in the near future is that Inodyn has repeatedly indicated its intention to proceed with a damages proceeding against Amazon EU S.à.r.l.

14.     In my experience, it is likely that the Mannheim District Court that presided over the infringement proceeding will also preside over the damages proceeding.

15.     In order to adequately prepare for the contemplated damages proceeding, it is important that Amazon EU S.à.r.l. obtain a copy of any agreements that allow Google to practice Inodyn's intellectual property, because the quantification of damages for patent infringement in Germany is frequently informed by existing licenses to the asserted patent or to related patents in the same portfolio. *See* Hoppe & Holtz, at 165-170. Such licenses are relevant to calculating the payment of a fictitious license fee to the infringed patent. *See id.* at 168-170. This method for calculating damages is especially common in German patent litigation. *See id.* at 168.

16.     Although there is no blanket prohibition against using or obtaining licensing agreements in German patent litigation, obtaining evidence through domestic discovery procedures is challenging in German civil actions. For example, pre-trial discovery is virtually non-existent in German patent litigation. *See* Hoppe & Holtz, at 17, 70. Additionally, obtaining

DLA PIPER LLP (US)
ATTORNEYS AT LAW
AUSTIN

1627200584

3

DR. KRENZ DECLARATION IN
SUPPORT OF EX PARTE APPLICATION

discovery for use in a proceeding that has not started yet is especially unlikely in German patent litigation. *See id.* at 69-70.

17. Due to the narrow scope of discovery obtainable through German procedure, parties in German cases often rely on foreign discovery tools, such as 28 U.S.C. § 1782. *See* Hoppe & Holtz, at 68, 71. German courts are receptive to the use of evidence obtained through foreign discovery tools, such as 28 U.S.C. § 1782. *See id.* at 68.

18. Documents that are obtained through foreign discovery tools, such as 28 U.S.C. § 1782, can be used in German cases, even when such evidence would not otherwise be available through German procedure. Pursuant to German law, a document that is obtained through 28 U.S.C. § 1782 can be formally introduced into a German proceeding. Once introduced into a German proceeding, such a document is subject to ordinary German rules concerning the admissibility of evidence.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 14, 2026 in Munich, Germany.

Signed by:

_____
442D14C63A9A47F...

Dr. Constanze Krenz

DLA Piper LLP (US)
Attorneys at Law
Austin

1627200584

4

DR. KRENZ DECLARATION IN
SUPPORT OF EX PARTE APPLICATION

# EXHIBIT A

| 6/445 | # 3 | Statement of claim.pdf | May 16, 2022, 1:13 p.m. |

# ULLRICH & NAUMANN

COMMERCIAL LEGAL PROTECTION INTELLECTUAL PROPERTY

ENGLISH CONVENIENCE (MACHINE) TRANSLATION

ULLRiGH 8 NAuMANN • 5chnaldmüh]str. 21 * 69115 He|delb.erg

Mannheim Regional
Court A 1,1
68159 Mannheim

*Partnership mbB*
*Patent and Law Attorneys*
*European Patent,*
*Trademark and Design*
*Attorneys*

Patent Attorneys
*Dr. Ulrich Neumann*
Graduate Engineer
*Dr. rer. nat. Thomas Malsch*

*Dr rer not. André Siepe*
*Dlplom-Physlkor*

*Dipl.-Ing. Norman Wenz*
*Graduate engineer in electrical engineering*
**Dr. Frank Hapmann**
*Diploma in Electrical Engineering, Diploma in Physics*
*D i p l .-Ing. Jacques-Philippe Legel*
*Dlplom-Informatlker*

*Dipl.-Phys. Robin Basiert*
*Dipl.-Phys. Volksi+)rl*

*Dr. rel. nat., Meil‹el Diepholz*
*Certified blood clinologist*

*Dipl.-Wl.-lng, Stefanie Beeil*
*Graduate in Food Science*

*Dr.rer.nat. Jan Erwig*
*M.Sc., lYlikroölalofljle and Biochemistry*

*Lawyers.*

*Gregor Keys Hodapp*
*Fachanwalt für gewerblchen Rechtsschutz*

*Ula Dollnpar*
*Daohan völtln Attr lniormellonsteohnaloglereofit*

*Palric Werner*
*°r -wg. Mechanical Engineering, LL.M. (pnklng, iffiE)*

*Auatrallan, New Zealandand*
*Etlropcan Patanl Affoyney*

*Dr.rer.nat, Daniel Schaft*
*Dlploni-Blologa*

## *PER BEA*

Our reference: 3695/K/1001

May 16, 2022 *I;*mk/us=,

File reference 2 0 46/21

# LAWSUIT

inodyn NewMedia GmbH, Saarstr. 73, 69151 Neckar-
Represented by    through    Managing Director    Lothar
Johannes Pantel, ibid

- Plaintiff -

Legal representatives:    Attorneys for the
Patent Attorneys and
Lawyers ULLRICH &
NAUMANN
PartG mbB
Schneidmühlstraße 21,
69115 Heidelberg;

Represented by:    Attorney
Gregor Jens Hodapp

*Schneidmühlstraße 21,*
*691 In Heidelberg, Germany*
*Phone +49 6221 60430*
*Fax +49 6221 604360*

*Mannheim office*
*Fraiiz-Volhard-Straße 3*
*68 l67 Mannheim, Germany Phone*
*+49 621 4892fii90*

*oltlce4 un-ip. coni*
*x.un-ip.com*

*Local court Ivlannhelm*
*Partnership tax code PR y00 26¿i*

*VAT ID No. DE 83 22B 667*
*fi'leU8r-Nr.' 37065/09902*
*El'nanzaml Hoidelber‹fi*

*Commaizbank AG, Heidelberg, IBAN DE68 6f28 00!i l 04zz leaf ao, BiC Dpes Derr szz*
*BW Bank/'LBBW, Slultp rl, IBAN DE17600a°0f0l 742l s0 o ss, Blc soLA DEST 80o*
*Heldaibasgor Volksbank eG, IB7\N DE6o size oooo oo4z saoo oi, aic oero odel HDD*
*Poslbenk l¿ertsr«ha, IBAN DE28 aso1 ooze oaoz fzoz s4, BIG PBNK Derr sea*

<u>445</u>                                               <u>U LLRICH & NAUMANN</u>

-2-

| | |
|---|---|
| <u>Participating patent attorneys:</u> | Patent attorneys at the patent and law firm ULLRICH & NAUMANN PartG mbB<br>Schneidmühlstraße 21, 69115 Heidelberg; Patent |
| <u>Proceedings conducted by:</u> | Attorney Robin Bastert |

against Amazon EU S.à.r.l., German branch, Marcel-Breuer-Straße 12, 80807 Munich-Schwabing, represented by managing directors Barbara Scarafia, Eva Gehlin, Jorrit van der Meulen, Eric Andrew Saarnlo, and Stefano Perego, ibid.

- Defendant -

Re:                 Patent infringement

*Stteitwett.*          EUR 4,000,000.00 (provisional estimate)

Under the assurance of our attorney that we are duly authorized, we hereby declare that we represent the plaintiff.

On behalf of and at the request of the plaintiff, we are filing a lawsuit against the defendant and request that a date for oral proceedings be set as soon as possible, at which we will submit the following

m o t i o n s

:

I.     The defendant is ordered to

1.     to refrain from doing so in the Federal Republic of Germany, under penalty of a fine of up to EUR 250,000.00 to be determined by the court for each case of infringement, or alternatively, imprisonment for up to six months, or in the case of repeated infringement, up to a total of two years, whereby the imprisonment is to be enforced against the legal representatives of the defendant,

a method for activating a software agent from a standby mode,

,

in which audio data is recorded using at least one microphone, whereby the audio data is continuously stored temporarily in at least one audio buffer so that the audio buffer always contains the most recent audio data, whereby the audio data is fed in real time to at least one secondary speech recognition process, which, upon recognizing a keyword or phrase, starts at least one primary speech recognition process or activates it from a dormant state, wherebywhich, upon recognizing a keyword or phrase, starts at least one primary speech recognition process or activates it from a dormant state, whereby the primary speech recognition process converts the entire or most recent content of the audio buffer as well as the subsequent live transmission into text and feeds this text to at least one dialogue systemprocess, which is also started or activated from a dormant state and analyzes the content of the text to determine whether it contains a question, a message, and/or a request addressed by the user to the software agent, whereby, if this is the case, the dialog system process triggers a suitable action or generates a suitable response and contacts the user via an output deviceuser via an output device, and otherwise, if there is only noise in the audio data or if the text does not contain any relevant or evaluable content, the primary speech recognition process immediately returns the dialog system process to idle mode or terminates it and returns control to the secondary speech recognitionprocess.

Claim 1 of the patent in suit —

in particular, if

– the secondary speech recognition process has a higher false positive rate in recognizing keywords and/or phrases compared to the primary speech recognition process, whereby false positives in the secondary speech recognition process are corrected by the interaction between the secondary speech recognition process and the primary speech recognition process.

- 4 -

process is corrected by the interaction between the secondary speech recognition process and the primary speech recognition process,

– Claim 4 of the patent in suit -

– in particular, if the secondary speech recognition process has a lower power consumption compared to the primary speech recognition process,

- Patent claim 5 of the patent in suit —

in particular if the primary speech recognition process and the dialogue system process are executed on an external server or on a server network, whereby the entire or most recent content of the audio buffer is transmitted to the server or server network via a network and/or radio network,

– Claim 6 of the patent in suit —

in particular, when an optical, acoustic, and/or haptic signal is emitted to the user by an output device in from as soon as a keyword or phrase is recognized by the secondary speech recognition process.

- Claim 9 of the patent in suit —

2.   to refrain from doing so in the Federal Republic of Germany, under penalty of a fine of up to EUR 250,000.00 to be determined by the court for each case of infringement, or alternatively, imprisonment for up to six months, or in the case of repeated infringement, up to a total of two years, whereby the imprisonment is to be enforced against the legal representatives of the defendant.

- 5 -

A system for voice activation of a software agent from a standby mode, with at least one microphone, at least one audio buffer, at least one output device, and a hardware infrastructure that can execute processes,

to use or offer for use, manufacture, place on the market, or use, or to import or possess for the aforementioned purposes,

in which the hardware infrastructure is configured such that audio data is recorded with at least one microphone, such that the audio data is continuously stored in the audio buffer, so that the audio buffer always contains the most recent audio data, such that the audio data is promptly fed to at least one secondary speech recognition processwhich, upon recognizing a keyword or phrase, starts at least one primary speech recognition process or activates it from a dormant state, that the primary speech recognition process converts the entire or most recent content of the audio buffer as well as the subsequent live transmission into text and feeds this text to at least one dialogsystem process, which also starts or is activated from a dormant state and analyzes the content of the text to determine whether it contains a question, a message, and/or a request addressed by the user to the software agent, whereby, if this is the case, the dialog system process triggers an appropriate action or generates an appropriate response and contacts the user via an output device, and that otherwise, if the audio data only contains noise or if the text does not contain any relevant orexpected content, the primary speech recognition process and the dialogue system process immediately return to idle mode or terminate and return control to the secondary speech recognition process.

— Claim 12 of the K\age patent —

in particular, if

the conversion of the entire or most recent content of the audio buffer into text takes place in a period of time that is shorter than it took the user to speak the corresponding content,

- Claim 13 of the patent in suit —

in particular, if an optical, acoustic, and/or haptic signal is output to the user by the at least one output device as soon as a keyword or phrase is recognized by the secondary speech recognition process,

- Claim 14 of the patent in suit —

in particular, if the at least one microphone, the at least one audio buffer, and the at least one output device are components of a local terminal device, wherein the secondary speech recognition process is executed on the local terminal deviceterminal device and wherein the primary speech recognition process and the dialogue system process are executed on an external server or on a server network, wherein the entire or the most recent content of the audio buffer is transmitted via a network and/or radio network from the local terminal device to the server or server network.

— Claim 15 of the patent in suit -

<u>ULLRICH & NAUMANN</u>

- 7 -

3.    the plaintiff for the scope of the actions referred to in I.1 and I.2 above, specifically

    a)    for the period since August 31, 2014, specifying

        aa)    the quantities and times of manufacture,

        bb)    the quantities of products contained or ordered, and the names and addresses of the manufacturers, suppliers, and other previous owners of the products described in
I.1 and I.2,

        cc)    the individual deliveries, broken down by delivery quantity, times, prices, and product descriptions, as well as the names and addresses of the customers,

        dd)    the individual offers, broken down by offer quantities, times, and prices, along with product descriptions and the names and addresses of the recipients of the offers,

        ee)    the type and scope of advertising carried out, broken down by advertising media, their circulation, distribution period, and distribution area,

    b)    for the period since September 29, 2019, additionally stating

        aa)    the production costs broken down by individual cost factors, and

        bb)    of the profit generated.

ULLRICH & NAUMANN

- 8 -

II.    It is hereby determined that the defendant is obliged to

    1.    pay the plaintiff appropriate compensation for the actions committed from August 31, 2014, to September 28, 2019;

    2.    to compensate the plaintiff for all damages incurred since September 29, 2019, and those that will be incurred in the future.

III.    The defendant shall bear the costs of the proceedings.

IV.    The judgment is provisionally enforceable against security. The individual parts of the operative part of the judgment may be enforced individually against security in the amount of a partial amount of the total security to be determined by the court in each case. The security may be provided by a written, irrevocable, unconditional, and unlimited guarantee from a credit institution authorized to conduct business in Germany.

In the event that written preliminary proceedings are ordered, we hereby request that a default judgment be issued in accordance with Section 331 (3) of the German Code of Civil Procedure (ZPO) if the defendant fails to indicate its willingness to defend itself in a timely manner.

ULLRICH & NAUMANN

- 9 -

# Reasons

### I. Facts

1.    Summary and background

At the beginning of 2013, the plaintiff, inodyn NewMedia GmbH, began developing its own digital voice assistant, which was to be marketed. The unique selling points of this digital voice assistant, with the product name "Ask Sleepi," were protected against imitation by means of a patent application—the patent in suit 10 2013 001 219.8    . The domain name "www.asksleepi.com," which matches the product name
"Ask Sleepi" was registered. For this purpose,    shows a set of documents    UN1 administrative    processes    for the    domain name.
"asksleepi.com" and an example of a monthly invoice (see point 3 under
"Other services").

The plaintiff is now forced to discontinue further development of its own voice assistant for economic reasons, as it is becoming apparent that, due to the market power of Amazon, an in-house development cannot compete with the dominance of Amazon's digital voice assistant. See, for example, the online article "Competition Law" available at https://www.heise.de/news/Wettheweibsrecht-EU-Kommission-hat-Alexa-Siri-Co-auf-dem-Kiеlкеr-ö06S055.    html    (Exhibit    UN1, starting on page 3).

In several registered letters dated June 8, 2020, to the German Amazon branch and the American headquarters, the plaintiff drew attention to the patent infringement and offered the defendant the patent in suit and related foreign patents for purchase or licensing (Exhibit UN2 and Exhibit UN3). The plaintiff's efforts were unsuccessful: the defendant neither ceased the patent infringement nor acquired a license.

2.    Patent in suit

The plaintiff is the owner of German patent 10 2013 001 219.8 (patent in suit). Examples of possible applications of the patent in suit can be found in the sales brochure, pages 1–2, as per Exhibit UN3: For example, it prevents the user from being disturbed by unwanted responses in the event of false activations.

- 10 -

The patent application was published in German on July 31, 2014 as disclosure document DE 10 2013 001 219 A1 (Appendix UN4), and the patent was granted by the German Patent and Trademark Office on August 29, 2019 as patent specification DE 10 2013 001 219 B4.     e UN5). Furthermore, the Australian Patent Office, the British Patent Office, and the Irish Patent Office granted patents AU 2014200407 B2, GB 2512178 B, and IE 86422 B1, which are based on the priority of German patent application 10 2013 001 219.8. No opposition to the granting of the patent has been filed in Germany or in the other countries.

It is expressly pointed out that the defendant did not file any opposition to the granting of patent DE 10 2013 001 219 B4 (patent in suit), even though the defendant *was* demonstrably aware *of* the corresponding patent application or disclosure document DE 10 2013 001 219 A1 as early as September 19, 2017: As can be seen from the set of documents UN6, in a patent application filed by Amazon (US 15/392,291, "Audio Message Extraction"), the examiner cited the plaintiff's US disclosure document US 2014/0214429 A1, which has the same content as the patent in suit, as early as September 19, 2017; see "Office communication" dated 09/19/2017, on the page "Notice of References Cited," in line "D". The aforementioned disclosure document US 2014/0214429 A1 of the plaintiff explicitly mentions the file number DE 102013001219.8 of the German patent in suit as a priority on the cover page. See entry under point (30) "Foreign Application Priority Dafa".

The plaintiff asserts claims for patent infringement. The patent in suit is in force. A corresponding extract from the register of the German Patent and Trademark Office is attached as Annex UN7.

3.    Parties to the proceedings

a)    The plaintiff
      The plaintiff is the owner of the patent in suit.

b)    The defendant
      The defendant offers and distributes methods and systems for voice activation of a software agent from a standby mode on the Internet.

U LLRICH & NAUMANN

- 11
-

II. Legal assessment

1.      Subject matter of the patent in suit

The patent in suit relates to the field of speech recognition, in particular the activation of processes by voice.

A search request has been filed for the patent application of the patent in suit.

The search report dated October 7, 2013 (a A r e n  U 8) cites the following prior art:

            DE 195 33 541 C1,
            DE 100 30 369 A1,
            DE 101 63 213 A1,
            DE 196 35 754 A1,
            DE 10 2009 059 792 A1,
        — DE 600 10 827 T2,
        — DE 600 15 531 T2,
        — US 2012 / 0 010 890 A1,
        — EP 1 058 876 B1 and
        — WO 01/ 01 389 A2.

These documents are attached as Annex UN9.

The plaintiff then filed a request for examination on October 28, 2013. Furthermore, on November 10, 2015, the plaintiff commented on the search report and submitted amended patent claims *and* an amended description to the files (set of documents UN10). These form the basis for the
15. January 2019 decision of the Examination Division (Exhibit UN11).

This examination report cites for the first time the disclosure document WO 2014/093238 A1 (Exhibit UN12), which has earlier priority but was published later. Pursuant to Section 3(2) PatG in conjunction with Section 4(2) PatG, this is not to be taken into account for the assessment

the inventive step and is therefore only relevant for novelty. This document describes a technology for speech recognition performance management.

In a submission dated May 3, 2019, the plaintiff responded to the examination report and submitted amended claims and an amended description to the files (Anla nkon olu UN13). This describes in detail (from page 4) that the citation WO 2014/093238 A1 clearly does not disclose the following claim features of the patent in suit, according to which, among other things

– a primary speech recognition process and a dialogue system process are provided,

– text is fed to a dialogue system process, and

– a dialogue system process is activated and deactivated.

Thus, the subject matter claimed in patent claims 1 and 12 is new in relation to this citation.

Since the prior art also does not detract from the novelty or inventive step of patent claims 1 and 12, the examination department has logically decided to grant the patent in accordance with the grant decision attached as Annex UN14.

As can be seen from the patent in suit (Annex UN5) on page 4 under "Description of the invention," the invention is based on the following task (quote):

> To create a method that makes it possible to ask complex questions or give messages and commands in "natural" language to a software agent or digital voice assistant that is in standby or sleep mode, whereby the system should respond or react immediately and without further intermediate interaction steps with a final and complete answer or with an action. The complexity of the supported questions, messages, and requests should be comparable or identical to the complexity that the system

ULLRICH & NAUMANN

- 13 -

mastered during normal operation. Furthermore, the method is designed to be particularly advantageous for standby operation of the software agent lasting several days. For the user, the difference between standby or sleep mode and regular operation should be barely noticeable, i.e., the user should have the impression that the system listens with the same attention in standby mode as in regular operation.

The above task is solved by combining the features of the collateral patent claims 1 and 12. These read as follows:

1.      Method for voice activation of a software agent from a standby mode, characterized in that

a) that audio data (11) is recorded with at least one microphone (2),

b) the audio data (11) is continuously stored in at least one audio buffer (6) are temporarily stored so that the audio buffer (6) always contains the most recent audio data (11),

c)  that the audio data (11) is fed in real time to at least one secondary speech recognition process (7), which, upon recognizing a keyword (18) or a phrase, starts at least one primary speech recognition process (8) or activates it from a dormant state,

d) that the primary speech recognition process (8) converts the entire or most recent content (21) of the audio buffer (6) and the subsequent live transmission (22) into text (13) and feeds this text (13) to at least one dialog system process (9), which also starts or is activated from a dormant state and analyzes the content of the text (13) to determine whether it contains a question, a message and/or a request addressed by the user to the software agent, whereby, if this is the case, the dialog system process (9) triggers a suitable action or generates a suitable response (14) and contacts the user via an output device (3, 4) and

e) Otherwise, if the audio data (11) only contains noise or if the text (13) does not contain any relevant or evaluable content, the primary speech recognition process (8) and the dialog system process (9) immediately return to idle mode or terminate and return control to the secondary speech recognition process (7).

system process (9) immediately return to the idle state or terminate and return control to the secondary speech recognition process (7).

12.     System for voice activation of a software agent from a standby mode, comprising at least one microphone (2), at least one audio buffer (6), at least one output device (3, 4), and a hardware infrastructure (25, 26, 27, 28, 29) that executes processes (7, 8, 9)
, characterized in that the hardware infrastructure (25, 26, 27, 28, 29) is configured
a) that audio data (11) is recorded with the at least one microphone (2),
b) that the audio data (11) is continuously stored in the audio buffer (6) so that the audio buffer (6) always contains the audio data (11) from the recent past,
c)  that the audio data (11) is fed in real time to at least one secondary speech recognition process (7), which, upon recognizing a keyword (18) or a phrase, starts at least one primary speech recognition process (8) or activates it from a dormant state,
 d) that the primary speech recognition process (8) converts the entire or the most recent content (21) of the audio buffer (6) and the subsequent live transmission (22) into text (13) and feeds this text (13) to at least one dialogue system process (9), which also starts or is activated from its idle state and analyzes the content of the text (13) to determine whether it contains a question, a message, and/or a request directed by the user to the software agent, whereby, if this is the case, the dialog system process (9) triggers a suitable action or generates a suitable response (14) and communicates with the user via output device (3, 4) and
e)  otherwise, if only noise is present in the audio data (11)or if the text (13) contains no relevant or no evaluable content, the primary speech recognition process (8) and the dialogue system process (9) immediately return to the idle state or terminate and return control to the secondary speech recognition process (7).

The features of the collateral patent claims 1 and 12 describe several alternative embodiments, whereby the alternative features are indicated by the collateral conjunction "or." In the following, two alternative embodiments "A" and "B" are considered as examples, which have the following features:

Claim 1

1.1      Method for voice activation of a software agent from a standby mode.

1.2      Audio data (11) is recorded with at least one microphone (2).

1.3      The audio data (11) is continuously stored in at least one audio buffer (6) so that the audio buffer (6) always contains the audio data (11) from the recent past.

1.4      The audio data (11) is fed in real time to at least one secondary speech recognition process (7), which activates at least one primary speech recognition process (8) from a dormant state when a keyword (18) is recognized.

1.5      The primary speech recognition process (8) converts the most recent content (21) of the audio buffer (6) and the subsequent live transmission (22) into text (13) and feeds this text (13) to at least one dialog system process (9).

1.6      The dialog system process (9) is activated from the idle state and analyzes the content of the text (13) to determine whether it contains a question addressed by the user to the software agent, in which case the dialog system process (9) generates a suitable response (14) and contacts the user via the output device (3, 4) \n.

21 445                                                   ULLRICH & NAUMANN

-16-

Embodiment "A":

1.7 (A). Otherwise, if only noise is present in the audio data (11), the primary
speech recognition process (8) and the dialog system process (9)
immediately return to idle mode and return control to the secondary
speech recognition process
(7).

Execution form "B":

1.7 (B) Otherwise, if the text (13) does not contain any relevant content, the
primary speech recognition process (8) and the dialogue system
process (9) immediately return to idle mode and hand control back to the
secondary speech recognition process (7).

Claim 12

12.1     System for activating a software agent from a standby mode, with

    12.1 a      at least one microphone (2),

    12.1 b      at least one audio buffer (6),

    12.1 C      at least one output device (3, 4) and

    12.1 d      a hardware infrastructure (25, 26, 27, 28, 29) which
                can execute processes (7, 8, 9).

12.2     The hardware infrastructure (25, 26, 27, 28, 29) is configured such that

    12.2 a '    that audio data (11) is recorded with the at least one
                microphone (2),

    12.2 b      that the audio data (11) is continuously buffered in the audio buffer
                (6) so that the audio buffer (6) always contains the audio data
                (11) from the most recent past,

    12.2 c      that    the   audio   data    (11)   in a timely manner       at
                least   a secondary speech recognition process (7),

ULLRICH & NAUMANN

- 17 -

which, upon recognizing a keyword (18), activates at least one primary speech recognition process (8) from a resting state,

12.2 such that the primary speech recognition process (8) converts the most recent content (21) of the audio buffer (6) and the subsequent live transmission (22) into text (13) and feeds this text (13) to at least one dialog system process.

(9), which is also activated from its idle state and analyzes the content of the text (13) to determine whether it contains a question addressed by the user to the software agent, in which case, if so, the dialog system process (9) generates a suitable response (14) and contacts the user via an output device (3, 4) and

Execution form "A":

12.2e (A) that otherwise, if only noise is present in the audio data (11), the primary speech recognition process

(8) and the dialogue system process (9) immediately return to the idle state and return control to the secondary speech recognition process (7).

Implementation form "B".

12.2e (B) that otherwise, if the text (II) does not contain any relevant content, the primary speech recognition process (8) and the dialogue system process (9) immediately return to the idle state and return control to the secondary speech recognition process (7).

The IVIerl‹malsanalyse is attached as <u>Appendix UN15</u> for easier handling.

23,445                                                            ULLRICH & NAUMANN

- 18 -

2.      Infringement

a)      Independent patent claims 1 and 12

The defendant advertises and markets, in particular under the labels

> Amazon Echo, Echo Dot, Echo Plus, Echo Studio, Echo Flex, Echo
> Input, Echo Spot, Echo Show, Echo Show 5, Echo Show 8, Echo Show
> 10, Echo Show 15, Echo Auto, Echo Buds, Fire TV Cube, Amazon Fire
> tablets, Alexa app for Android and iOS (hands-free function), Amazon
> Music app for Android and iOS (hands-free function)

Products that use the digital voice assistant "Alexa."

Evidence:    Printout from the defendant's website www.amazon.de (Exhibit
             UN16);

These products make use of the teaching of claims 1 and 12 of the patent in suit,
as worded.

Evidence:      Wikipedia entry "Amazon Echo" available at
               outtr s: de wi ip di      w   A a on Echo (system UN17);

> Excerpt from Amazon's developer documentation available at
> https://developer.amazon.com/de-DE/docs/alexa/alexa voice-
> service/implement-ww-verification.html
> Archived version (Wayback Machine) available at
> https://web archiVe org/web/20210413002712/htt s //d velo e an a o
> n.com/de-DE/docs/alexa/alexa-voice-service/implement-ww-
> verification.html (Exhibit UN18);

> Excerpt from Amazon's developer documentation available at
> https://developer.amazon,com/de-DE/docs/alexa/aVs-
> device-sdk/overview.html
> Archived version (Wayback Machine) available at
> https://web.archive.oig/web/20210411204648/htfps'//developer.amazo
> n.com/de-DE/docs/alexa/a,vs-device-sdk/over.view.html (Exhibit UN19);

-19 -

Excerpt from Amazon's help and customer service pages available at https://www.amazon.de/gp/help/customer/display.html?nodeId-20 1602230 Archived version (Wayback Machine) available at https!//web.archive.org/web/20201115183526/https://www.amazo i.de/ gp/help/customer/display.html?nodeId=201602230 Appendix UN20);

Video documentation, recorded on March 21, 2020, April 8, 2020, March 31, 2021, June 2, 2021, and April 7, 2022, which show the Amazon Echo Dot (2nd generation), Amazon Echo Dot (3rd generation), Amazon Echo Dot (4th generation), Amazon Echo Flex, Amazon Echo Show 5, Amazon Fire 7 tablet, as well as the Alexa app (hands-free mode) and the Amazon Music app (hands-free mode) (attachment bundle UN21);

Expert opinion.

As can be seen in A la e UN17 under the section "Voice control," the digital voice assistant "Alexa" is a software agent that can be activated from standby mode by voice activation, i.e., an activation word (feature 1.1).

Evidence:    Anla e UN17 Expert opinion

For this purpose, audio data is recorded with at least one microphone in accordance with the above-mentioned section of Annex UN17 (feature 1.2).

Evidence:    Appendix UN17
            Expert opinion

Furthermore, Annex UN18 on pages 3 and 4 shows that audio data is continuously stored in an audio buffer (known as a "shared memory ring buffer") so that the audio buffer always contains the most recent audio data. See the diagram on page 3 and the accompanying description:

"A shared memory ring buffer satisfies the requirement to stream a continuous utterance to AVS that includes 500 milliseconds of pre-roll, the wake word, and the user's request for cloud-based wake word verification. (...) Write API - Used by the recording process to write audio samples to the shared memory ring buffer. Write samples should move data so that the oldest audio samples are overwritten."

-20 -

> In English:
> For cloud-based activation word verification, a ring buffer in shared memory fulfills the requirement to stream a continuous utterance to the AVS, which contains 500 milliseconds of lead-in, the activation word, and the user's request. (...) Write API - Used by the recording process to write audio samples to the shared ring buffer. When writing audio samples, the data should be shifted so that the oldest audio samples are overwritten."

Accordingly, tests with different Amazon Echo smart speakers have shown that archived voice recordings (linked to a user account: "Settings > Alexa Privacy") contain the activation word and up to three additional words before the activation word, especially when the activation word "computer" is used. The activation word and all sounds or words preceding the activation word inevitably originate from the above-mentioned audio buffer or shared memory ring buffer, as the local device (smart speaker) can only begin transmitting the audio data to Amazon's data center after recognizing the activation word.

Evidence:    File bundle UN21; see video no. 10 with the file name "Anlagenkonvolut UN21 Video 10.mp4," which shows an Amazon user account with archived voice recordings; for example, at 00:20 in the video, you can hear: *"The new computer is faster"* and at time position 00:53 you can hear: *"and when the So/r/jovter/e/z/ has understood"* (the activation word is "computer"); Appendix UN18; Expert opinion.

This means that feature 1.3 is also implemented.

The audio data is continuously evaluated by the "Wake Word Engine" (WWE). This is stated on page 2 under point 3 of Annex UN19:

> "The WWE is always monitoring the SDS. When the WWE detects the wake word Alexa, it sends the audio to the AIP."

> In English:
> "The WWE constantly monitors the SDS. When the WWE detects the wake word Alexa, it sends the audio to the AIP."

The aforementioned SDS ("Shared Data Stream") is responsible for transferring data, such as audio data, between the individual modules or functional units. The aforementioned AIP (Audio Input Processor) ensures that the audio data is forwarded to the cloud for processing.

The Wake Word Engine (WWE) serves as a secondary speech recognition process that, upon recognizing a keyword (e.g., "Alexa," "Computer," or "Echo"), initiates the primary speech recognition process implemented by the Amazon Cloud. Please refer to Appendix UN20 for more information. On page 1, point 3 states:

> "When you speak to Alexa, an audio recording of your question is sent to Amazon's cloud, where your request and other information are processed to provide a response."

Evidence:          Appendix
                   UN19
                   Appendix
                   UN20
                   Expert opinion This means

that feature 1.4 is also implemented.

Annex UN18, page 1 states that the Alexa Voice Service (AVS) performs the primary speech recognition. For this purpose, at least the most recent content of the audio buffer and the subsequent live transmission are processed. According to Annex UN18, section "Requirements for Cloud-Based Wake Word Verification," the audio data from the audio buffer (shared memory ring buffer) includes a 500-millisecond pre-roll before the activation word and the actual activation word ("wake word"). The audio data from the user request ("user speech") is then processed until the "stop capture directive."

In addition, point 2 on page 9 of Appendix UN20 describes:

> "(...) When the devices recognize the activation word, Alexa streams audio to the cloud on your Fire tablet, including a fraction of a second of what was said before the activation word, e.g.,    rd." (Underlining added)

This is only possible if at least the most recent content of the audio buffer is sent to Amazon's data center (cloud), since the local system (e.g., smart speaker or Fire tablet) can only begin transmitting the audio data to Amazon's data center after (locally) recognizing the activation word (e.g., "Alexa").

-22-

The user's "recording history" (accessible via www.amazon.de/ alexadatenschutzeinstellungen) and Appendix UN20, pages 2 to 3, points 7, 8, 10, and 12 show that the primary speech recognition process converts the audio data into a text transcription and that this text is fed into the dialogue system process, which is also implemented in Amazon's cloud by the Alexa Voice Service (AVS). In particular, it is noted that the dialogue system process creates a text-based history of all user requests, including the responses generated by the dialogue system, as set out in Appendix UN20, on page 2, under point 8:

> The Voice Recordings History is a feature that allows you to play back your voice recordings that have been sent to the cloud, as well as review the text transcription of what Alexa thinks you said and Alexa's respective response. This feature can help you better understand how Alexa works and what Alexa records and does not record."

With reference to Appendix UN20, page 5, point 3, it is also pointed out that audio data must necessarily be converted into text if the user wants to send spoken text messages:

> "(...) The messages are then processed in the cloud and—depending on how the message is to be sent—converted into text or speech."

Evidence:          Appendix
                   UN18
                   Appendix
                   UN20
                   Expert opinion Therefore,

feature 1.5 is also implemented.

The dialogue system process (in Amazon's cloud) analyzes the text to determine whether it contains a question from the user to the software agent and generates an appropriate response, which is communicated via an output device ("media player"). An example is given in Appendix UN19 on page 2:

1. You ask a question, "Alexa, what is the weather?"

8. The Media Player plays the directive. For this example, Alexa responds with "The weather is 90 degrees and cloudy with a chance of rain."

ULLRICH & NAUMANN

- 23 -

In German:
1. You ask a question, "Alexa, what's the weather like?"
   (...)
8. The media player plays the instruction. In this example, Alexa responds with "The weather is nine degrees and cloudy with a chance of rain."

In addition, reference is made to the video documentation in accordance with <u>Annex UN21</u>, in particular the video files:

- <u>Attachment UN21 Video 1.mp4</u>:
  Amazon Echo Dot (3rd generation), recorded on April 8, 2020;
- <u>Attachment bundle UN21 Video 2.mp4</u>:
  Amazon Echo Dot (3rd generation), in English, recorded on April 8, 2020;
- <u>Attachment bundle UN21 Video 3.mp4</u>:
  Amazon Echo Flex, recorded on April 8, 2020;
- <u>File bundle UN21 Video 4.mp4</u>:
  Amazon Echo Dot (2nd generation), recorded on March 21, 2020;
- <u>File UN21 Video 5.mp4</u>:
  Amazon Echo Dot (4th generation), recorded on March 31, 2021;
- <u>Attachment bundle UN21 Video 6.mp4</u>:
  Alexa app (hands-free mode), recorded on March 31, 2021;
- <u>Attachment package UN21 Video 7.mp4</u>:
  Amazon Music app (hands-free mode), recorded on March 31, 2021;
- <u>Attachment bundle UN21 Video 8.mp4</u>:
  Amazon Echo Show 5, recorded on June 2, 2021
- <u>System convoy UN21 Video 9.mp4</u>:
  Amazon Fire 7 tablet, recorded on April 7, 2022.

For example, in Video 1, the system responds to the question "Computer, what day is it today?" via an output device (speaker) with the current day of the week and date. (The activation word in this example is "Computer.")

Evidence:            <u>Exhibit UN19 Exhibit bundle UN21 </u>Expert opinion

Therefore, <u>feature 1.6 </u>is also realized.

ULLRICH & NAUMANN

- 24 -

If there is only background noise (<u>feature 1.7 (A)</u> — embodiment "A"), the primary speech recognition process and the dialogue system process (in Amazon's cloud, "Alexa Voice Service," AVS) are stopped and control is handed back to the secondary speech recognition process (Wake Word Engine). The secondary speech recognition process then listens for the next occurrence of the activation word.

The same applies to execution flow "B" — <u>feature 1.7 (B)</u>: If the user's query converted into text does not contain any relevant content, the primary speech recognition process and the dialogue system process immediately return to idle mode and hand control back to the secondary speech recognition process. This applies in particular if the activation word was recognized incorrectly. See "Cloud verification" as described in <u>Appendix UN20</u> on page 1 under point 4:

> Alexa and Echo devices were developed to record as little audio data as possible and to minimize the amount of background noise that is sent to the cloud. By default, Alexa-enabled devices only stream audio data to the cloud when the wake word is recognized (or Alexa is activated by pressing a button). When an Alexa-enabled device recognizes the wake word and begins streaming audio data to the cloud, Alexa performs a <u>"cloud verification" of the wake word</u>. Alexa uses the more powerful processing capabilities of the cloud to recheck the acoustic signal and confirm recognition of the wake word. <u>If the cloud verification also fails to recognize the wake word, Alexa stops processing the audio data and terminates the audio stream to the cloud</u>." (Emphasis added)

Reference is also made to <u>Appendix UN18</u>, which describes the implementation of the above-mentioned cloud-based wake word verification. Page 1 states:

> "Cloud-based wake word verification improves wake word accuracy for devices that implement the Alexa Voice Service (AVS) by reducing false device wakes caused by utterances that sound similar to the wake word. For example, words that might cause a false wake for "Alexa" include "Alex," "election," and "Alexis." Cloud-based wake word verification also detects media mentions of the wake word. For example, the mention of "Alexa" in an Amazon commercial."

> <u>In German:</u>
> Cloud-based verification of activation words improves the accuracy of activation words for devices that implement the Alexa Voice Service (AVS) by reducing false device activations caused by utterances that

-25-

sound similar to the activation word. Words that can cause Alexa to activate incorrectly include, for example, "Alex," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "Alexa," "
"Alexa" include "Alex,"
"electIon," and "Alexis." Cloud-based activation word verification also recognizes media mentions of the activation word. For example, the mention of "Alexa" in an Amazon commercial.

It should be noted that subclaim 4 of the patent in suit specifies a method characterized in that the secondary speech recognition process (wake word engine) has a higher false positive rate in recognizing keywords (wake words or activation words), whereby false positive errors of the secondary speech recognition process (Wake Word Engine) are corrected by the interaction between the secondary speech recognition process and the primary speech recognition process. Furthermore, the description of the patent in suit (<u>Exhibit UN5</u>) explains in paragraph [0027]:

> "(...) It is also possible that the keyword 18 recognized by the secondary speech recognition process T no longer appears in the text 13, since the speechrecognition in full operation (i.e., the primary speech recognition process 8) is higher and the secondary speech recognition process 7 has therefore made a mistake."

With regard to <u>feature 1.7 (A) </u>and feature 1.7 (B), reference is made in particular to the video documentation in accordance with Annex UN21, in particular the video files:

- Attachment bundle UN21 Video 1.mp4:
  Amazon Echo Dot (3rd generation), recorded on April 8, 2020;
- <u>Asset bundle UN21 Vidao 2.mp4:</u>
  Amazon Echo Dot (3rd generation), in English, recorded on April 8, 2020;
- Anla enkon olut UN21 Video 3      4
  Amazon Echo Flex, recorded on April 8, 2020;
- <u>Attachment bundle UN21 Video 4.mp4:</u>
  Amazon Echo Dot (2nd generation), recorded on March 21, 2020;
- <u>Equipment bundle UN21 Video 5.mp4:</u>
  Amazon Echo Dot (4th generation), recorded on March 31, 2021;
- Attachment bundle UN21 Video 6.m 4:
  Alexa app (hands-free mode), recorded on March 31, 2021;

-26-

- Attachment bundle UN21 Video 7.mp4:
  Amazon Music app (hands-free mode), recorded on March 31, 2021;
- Attachment UN21 Video 8.mp4:
  Amazon Echo Show 5, recorded on June 2, 2021
- Attachment bundle UN21 Video 9.mp4:
  Amazon Fire 7 tablet, recorded on April 7, 2022.

With regard to feature 1.7 (A), i.e., embodiment "A," the tests documented in the videos show the following behavior: If only background noise is present, the backend system (Alexa Voice Service) in Amazon's cloud (data center) decides not to output a voice response. This is the case, for example, when there is only background noise such as household noise, construction noise, or music. Accordingly, the task for the backend system (i.e., for the primary speech recognition process and the dialogue system process) is completed and the smart speaker is returned to "standby mode," i.e., the local secondary speech recognition process waits for the next occurrence of the activation word—e.g., "Alexa" or "Computer."

Therefore, feature 1.7 (A), i.e., embodiment "A," is realized.

With regard to feature 1.7 (B), i.e., embodiment "B," the tests documented in the videos show the following behavior: If the received utterance does not contain any relevant content or question, the backend system (Alexa Voice Service) in Amazon's cloud (data center) decides not to output a voice response. This is the case, for example, with incomplete utterances such as "oben drüber" (above), which cannot be evaluated by the die e without further context, or with an incorrectly recognized activation word such as "Alexander" instead of "Alexa." Accordingly, the task for the backend system (i.e., for the primary speech recognition process and the dialog system process) is completed and the smart speaker is returned to "standby mode," i.e., the local secondary speech recognition process waits for the next occurrence of the activation word—e.g.,
"Alexa" or "Computer."

With regard to cloud verification of the activation word, the video documentation shows the following behavior in particular: If the activation word is incorrectly recognized by the secondary speech recognition process or by the wake

If a word is recognized incorrectly (e.g., "Alexander" instead of "Alexa"), the backend system in the data center (Alexa Voice Service) decides that the received statement or question is not relevant and does not provide a voice response. Example: A person calls out, "Alexander, are you leaving now?" See also video no. 10 from exhibit bundle UN21 (file name "Exhibit bundle UN21 Video 10.mp4"), which shows an Amazon user account with archived voice recordings; at 02:56 in the video, you can hear: "Alexander, are you going (...)" and in the corresponding voice recording history in the Amazon user account, the following is noted on the screen: "(...) Audio was not intended for Alexa."

Therefore, feature 1.7 (B) is also (or alternatively) realized, i.e., also embodiment "B."

| | |
|---|---|
| Evidence: | Exhibit UN18 |
| | Exhibit UN20 Exhibit |
| | bundle UN21 Expert |
| | opinion |

Therefore, all features of claim 1 are realized.

The above statements apply analogously to features 12.1 to 12.2e of claim 12, so that this is also realized according to the wording.

b)      Dependent claims 4, 5, 6, 9, 13, 14, and 15

The defendant's products mentioned in II.2.a. also implement dependent patent claims 4, 5, 6, 9, 13, 14, and 15. These have the following features:

Claim 4

4.1    The secondary speech recognition process (7) has a higher false positive rate in recognizing keywords (18) than the primary speech recognition process (8).

4.2    False positive errors of the secondary speech recognition process (7) are corrected by the interaction between the secondary speech recognition process (7) and the primary speech recognition process (8).

-28-

Claim 5

5.1   The secondary speech recognition process (7) has a lower power consumption compared to the primary speech recognition process (8).

Claim 6

6.1   The primary speech recognition process (8) and the dialogue system process (9) are executed on an external server (28) or on a server network.

6.2   The entire or most recent content (17, 21) of the audio buffer (6) is transferred via a network (29) and/or wireless network to the server (28) or server \cluster.

Claim 9

9.1 An optical, acoustic, and/or haptic signal is emitted to the user from an output device (3, 4) as soon as a keyword (18) *is* recognized by the secondary speech recognition process (7).

Claim 13

13.1 The conversion of the entire or most recent content (17, 21) of the audio buffer (6) into text (13) takes place in a period of time that is shorter than it took the user to speak the corresponding content (17, 21).

Claim 14

14.1 An optical, acoustic, and/or haptic signal is output to the user by the at least one output device (3, 4) as soon as a keyword (18) is recognized by the secondary speech recognition process (7).

ULLRICH & NAUMANN

Claim 15

15.1    The at least one microphone (2), the at least one audio buffer (6), and the at least one output device (3, 4) are components of a local terminal device (1).

15.2    The secondary speech recognition process (7) is executed on the local terminal device (1).

15.3    The primary speech recognition process (8) and the dialog system process (9) are executed on an external server (28) or on a server network.

15.4    The entire or most recent content (17, 21) of the audio buffer (6) is transmitted via a network (29) and/or radio network from the local terminal device (1) to the server (28) or server network.

As already stated in <u>feature 1.7 (B)</u>, Annex UN20 on page 1, point 4 states:

> Alexa and Echo devices are designed to record as little audio data as possible and minimize the amount of background noise that is sent to the cloud. By default, Alexa-enabled devices only stream audio data to the cloud when the wake word is recognized (or Alexa is activated by pressing a button). When an Alexa-enabled device recognizes the wake word and begins streaming audio data to the cloud, Alexa performs a "cloud verification" of the wake word. Alexa uses the more powerful processing capabilities of the cloud to re-examine the acoustic signal and confirm recognition of the wake word. If the cloud verification does not also recognize the activation word, Alexa stops processing the audio data and terminates the audio stream to the cloud. If Alexa confirms that the activation word has been spoken, Alexa will then continuously attempt to determine when your request has ended and immediately terminate the audio stream.

Thus, features 4.1 and 4.2 are clearly patentable (no. 4), 5.1 (<u>patent claim 5)</u> <u>claim 5</u>) and 6.1 and 6.2 (patent claim       6) are clearly realized.

<u>Evidence:</u>     <u>Appendix UN20</u> Expert
                       opinion

With regard to patent claim 13, tests documented on video (attachment bundle UN21) have shown that in the event of a false positive activation word (e.g., "Alexander" in the sentence "We ate as soon as Alexander was back."), the cloud-based verification of the activation word reacts very quickly and immediately interrupts the process: See the duration of the light ring on the smart speaker. This is only possible if the cloud-based speech recognition processes the previous content of the audio buffer (e.g., "as soon as Alexander") without avoidable delays, i.e., in a time span that is shorter than it took the user to speak the corresponding content. This is particularly important because there are inherent system latencies and delays that cannot be avoided. For example, local recognition can only respond at the end of the (supposed) activation word and only then begin to transmit the previous data (here: "as soon as Alexander") from the audio buffer. In addition, there are transmission delays (WLAN, Internet, cloud, data center). Reference is also made to FIG. 3 from the patent in suit (Exhibit UNI?) and the associated reference numerals.

Evidence:     Appendix UN21, for example, video 4 at time 01:41, video 5 at time 00:26, and video 6 at time 00:32, and video 7 at time position 00:09; expert opinion.

Thus, feature 13.1 is realized.

Features 9.1 (patent claim 9) and 14.1 (patent claim 14) are clearly implemented in accordance with videos 1 to 9 from exhibit bundle UN21 and pages 1 and 2, points 1 to 5 of exhibit UN20. In particular, point 5 on pages 1 and 2 of exhibit UN20 describes:

"Every time your Echo device recognizes the wake word, a visual or audible indicator signals that the device is recording audio data to send it to the cloud."

Evidence:     Exhibit UN20 Exhibit bundle UN21 Expert opinion

ULLRICH & NAUMANN

-31-

Features 15.1 to 15.4 of patent application (srp uch 15) are clearly evident from the following documents:

Exhibit UN16 shows a local terminal device with a microphone and loudspeaker (output device). Exhibit UN18 specifies the audio buffer or shared memory ring buffer (feature 15.1).

The secondary speech recognition process (wake word engine) on the local terminal is described in Annex UN19 (feature 15.2).

With regard to feature 15.3, reference is made to Appendix UN20, page 1, point 3.

Feature 15.4 is described on page 10 of Λnlage UN20 under point 2 and specified in detail with regard to the audio buffer and the data transmitted from it in the developer documentation Anla    UN18.

| Evidence: | Appendix UN16 |
| | Appendix UN18 |
| | Appendix UN19 |
| | Appendix UN20 |
| | Expert opinion |

U ULRICH & NAUMANN

- 32

### III. Pre-court warning

Annex UN22 contains a warning letter from the plaintiff dated March 5, 2021. The defendant did not respond to this letter.

Since the defendant has therefore not issued a cease-and-desist declaration with penalty clause, legal action is now necessary.

### IV. Jurisdiction

The jurisdiction of the Mannheim Regional Court is based on Section 143 of the German Patent Act (PatG) and Section 32 of the German Code of Civil Procedure (ZPO). Due to the nationwide distribution of the contested product, for example via the defendant's website, there is also a specific infringement of property rights in the district of the court seized.

### V. Legal assessment

The legal assessment confirms the validity of the claim:

1.      The injunction sought in claim 1.1 is based on Section 139(1) in conjunction with Section 9 No. 1 of the German Patent Act (PatG). Furthermore, the injunction sought in claim 1.2 is based on Section 139(1) in conjunction with Section 9 No. 2 PatG. The patent in suit is in force. It is infringed by the defendant as stated in the wording. Since patent infringements have already occurred, there is a risk of repetition, which is necessary for the asserted claim for injunctive relief.

2.      The plaintiff does not know the extent of the acts of use. The defendant is therefore obliged under Section 242 of the German Civil Code (BGB) to provide the plaintiff with an account so that the plaintiff can quantify its claims for compensation and damages. The claim for information and distribution channels of the products used is based on Section 140b of the German Patent Act (PatG). Consequently, claim 1.3 is justified.

ULLRICH & NAUMANN

-33-

3.    The claim for reasonable compensation asserted in claim 11.1 is based on Section 33 (1) PatG.

4.    The claim for damages asserted in claim II.2 is justified on the merits pursuant to Section 139 (2) PatG. The defendant has intentionally and culpably infringed the patent in suit; at the very least, it is guilty of gross negligence. It can also be assumed that the defendant's patent-infringing actions are highly likely to cause damage to the plaintiff.

5.    As is customary, a one-month "grace period" is taken into account when formulating the claims for accounting and determination of damages with regard to the publication date of the patent application and the publication date of the patent grant.

Gregor Jens Hodapp
Law suit lt

Rwhelthastert
patent
attorney

*Attachments*

*Attachment   bundle
UN1      Attachment
bundle              UN2
Attachment UN3
Appendix UN4
ën/ape 0/VV Annex
UN6 Annex UND
Appendix UN8
Anlapen package
UN9 Anlapen package
UNI0 Anlape UN1 I*

*Anlape UN12 Investment
package UNI3 Lalage UN14
Anlape UN15
Investment UNI6
,Anlape UNIT
Anlape UNI8
Anlape UNI9
Anlape UN20
Anlapen bundle  UN£l
Investment UN22*

# EXHIBIT B

ENGLISH CONVENIENCE (MACHINE) TRANSLATION

File number: 2
O 46/21



Mannheim Regional Court

# In the name of the people

# Judgment

In the legal dispute

**inodyn NewMedia GmbH**, represented by its managing director, Saarstr. 73, 69151 Neckargemünd
- Plaintiff -

<u>Legal representative:</u>
**Ullrich & Naumann**, Schneidmühlstr. 21, 69115 Heidelberg, Ref.: 3695/K/1001

against

**Amazon EU S.à.r.l., German branch**, represented by the managing director, Marcel-Breuer-Straße 12, 80807 Munich
- Defendant -

<u>Legal representatives:</u>
Lawyers **DLA Piper UK LLP**, Maximilianstraße 2, 80539 Munich, Ref.: MG/409253/

regarding patent infringement

the Mannheim Regional Court - 2nd Civil Chamber - through Regional Court Judge Stihler, Regional Court Judge Elter, and Regional Court Judge Sender, based on the oral hearing on July 22, 2025, has ruled as follows:

In this respect, it is irrelevant that the WWE function continues to monitor the data "originating" from the audio buffer during server-side processing of a potential request by *ASR* and *NLU* to determine whether a keyword is (again) present in *the SDS*. The only relevant factor is that, after *ASR* and *NLU* have finished processing a specific end device, only the *WWE* performs keyword monitoring, while *ASR* and *NLU* no longer perform any processing steps for that specific end device.

7.     The targeted terminal devices also make direct use of the literal meaning of claim 12 of the patent in suit, in particular features 12.2.1 to 12.2.6, when connected to the server-side applications *ASR* and *NLU* via a network, because in this state the hardware infrastructure (terminal device and server) of the system as a whole is configured in such a way that it can fulfill the specifications mentioned there, which correspond to the procedural steps according to features 1.1 to 1.6.2.

III.     Whether the *Alexa app* and *Amazon Music app*, also challenged, in their iOS and Android versions respectively, make use of the teaching of patent claims 1 and 12 can be left open.

This is because the defendant has substantiated its claim that it is neither the manufacturer nor the distributor of the respective apps. Rather, *Amazon Mobile LLC* is solely responsible. The plaintiff, which bears the burden of proof and presentation for standing to sue, did not counter this with its own statement of facts.

Against this background, there was no need to deal with the defendant's request for a preliminary ruling with regard to third-party license agreements allegedly concluded by the plaintiff for these very applications, as this was not relevant to the decision.

IV.     Contrary to the defendant's opinion, there is also an infringement in Germany.

1.     The contested end devices implement the entire process according to claim 1 of the patent in suit by resorting to server-side processes via a network connection, when assessed in Germany.

In this respect, it can be assumed that the servers providing the *ASR* and *NLU* functions are located in Ireland and Spain.

but supplies them to a third party who predictably combines them to form the protected overall device (BGH, GRUR 2019, 1171 marginal no. 47 et seq. - Schutzverkleidung; Kühnen, 16th edition 2024, chap. A marginal no. 373).

bb)  Accordingly, in the case in dispute, it can be assumed that the system is manufactured by connecting an Alexa-enabled terminal device to the server infrastructure on the customer's side, whereby the defendant is to be attributed with the final act of manufacture by the customer. As already explained, the recognizable technically and economically sensible use of the contested end devices is to create a system that can use the Alexa function. Since these are designed a *priori* to connect to the aforementioned servers, in the case in dispute, the necessary and intended establishment of this connection by the customer on the part of the defendant means that the establishment of the system by the defendant itself must be affirmed.

b)    There is no other assessment for the act of use of placing the product on the market.

aa)  In the case of a combination claim, the entire combination must generally be supplied. If only its individual components are placed on the market, this usually constitutes an indirect patent infringement. However, an exception and thus a direct patent infringement may also be considered if the assembly of the individual components into the protected overall device is clearly foreseeable and easy to accomplish for the customer (Higher Regional Court of Düsseldorf, decision of December 17, 2012 – I-2 W 28/12, BeckRS 2015, 5480; Kühnen, 16th edition 2024, chap. A para. 436).

bb)  This is the case here because of the easy and reliable connection of the end devices to the servers via a network on the customer's side for the technically sensible use of speech recognition.

c)    The defendant has not significantly disputed that it uses, owns, and imports a system that meets the requirements, at least for advertising purposes.

VI.   The patent infringements found justify the legal consequences apparent from the operative part of the judgment in accordance with national provisions.

1.    The injunctive relief (operative part I.1 and III.1) is based on Section 139(1) sentence 1 PatG.

In view of the indirect infringement of claim 12 of the patent in suit, the requested "absolute prohibition" was to be pronounced in the case in dispute (Tenor III.1). The defendant has not asserted, nor is it otherwise apparent, that the contested end devices can be used in a technically and economically sensible manner without the use of the Alexa function, which would be a prerequisite for a limited injunction with a warning notice (cf. OLG Düsseldorf, Mitt 2003, 264, 268 - Antriebsscheibenaufzug).

Since the defendant is ordered to cease and desist, it must be threatened with the statutory coercive measures at the plaintiff's request (Section 890 (2) ZPO).

2.    The plaintiff is entitled to information and accounting claims (Tenor I.2, III.2, and III.3) to the extent last requested under Section 140b (1) and (3) PatG and under Section 242 BGB, which has become established customary law (see BGH, GRUR 1994, 630, 631 et seq. - Cartier-Armreif), whereby the plaintiff may also demand the submission of supporting documents in accordance with Section 259 BGB (see OLG Karlsruhe, InstGE 11, 15 para. 37 et seq. - SMD-Widerstand; judgment of January 31, 2019 – 6 U 135/14, juris para. 172 et seq.).

However, the action had to be dismissed insofar as the plaintiff demanded in its main and alternative claims that the defendant identify those deliveries and customers who had used the device in accordance with the patent. Such an obligation cannot be derived from § 140b (1), (3) PatG or from the

§ 242 BGB. In the case in dispute, it is also not apparent how the defendant could provide reliable information on this, so that a corresponding obligation is neither reasonable nor necessary in the case in dispute.

3.    It was also determined that the defendant must pay damages for the unlawful acts of use since the respective date stated in the operative part (operative part II.1 and IV.).

a)    The defendant is obliged to pay damages to the plaintiff on the merits (§ 139 (2) PatG). As a commercial enterprise, the defendant should have known at the latest one month

Stihler

Judge
at the district
court

Elter

Judge
at the district court

Sender

Judge
at the High Regional
Court

Judge
at the district court
Parent is on
vacation and
and is therefore unable
to sign

Stihler

Judge
at the district court